UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
ALEX AND ANI, LLC,              )
                                )
          Plaintiff,            )
                                )
     v.                         )   C.A. No. 13-718 S
                                )
ELITE LEVEL CONSULTING, LLC,    )
TRAVIS BRODY, J. JONATHAN       )
WEISS, LUXURY BUSINESS JETS,    )
LLC, ROXY, INC., GENESIS        )
SALES CORPORATION, JJ & M       )
CORPORATION, and BJ'S           )
WHOLESALE CLUB, INC.,           )
                                )
          Defendants.           )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

In this bewildering ballad of bungled bangle banditry, Plaintiff Alex and Ani, LLC ("Alex and Ani"), a purveyor of "positive-energy jewelry," has brought a 14 count Amended Complaint against numerous defendants: Elite Level Consulting ("ELC"), Travis Brody ("Brody"), J. Jonathan Weiss ("Weiss"), Luxury Business Jets, LLC ("Jets"), Roxy, Inc. ("Roxy"), Genesis Sales Corporation ("Genesis"), JJ & M Corporation ("JJM") and BJ's Wholesale Club, Inc. ("BJ's") (collectively, "Defendants"). The suit stems from alleged acts of deception which resulted in Alex and Ani agreeing to sell some 26,000 pieces of jewelry to Brody and ELC at heavily discounted prices. Instead of placing

these pieces in promotional packages at prestigious events, as advertised, Brody and ELC allegedly acted in concert with other Defendants to resell the pieces and many of them ultimately made their way to BJ's locations in Massachusetts and Rhode Island.

Three motions to dismiss are currently pending. For the reasons that follow, the motion to dismiss filed by ELC and Brody (ECF No. 40) is GRANTED IN PART and DENIED IN PART; the motion to dismiss filed by BJ's (ECF No. 41) is DENIED; and the motion to dismiss filed by Roxy, Genesis and JJM (ECF No. 49) is GRANTED IN PART and DENIED IN PART.

I.   Facts[1]

Alex and Ani is a Rhode Island-based limited liability company. It manufactures and sells what it calls "American-made, eco-friendly, spiritually uplifting, positive-energy jewelry" and has enjoyed enormous success, achieving high levels of sales throughout the United States and the world. (Am. Compl. ¶¶ 22-23, ECF No. 25.) Alex and Ani sells its merchandise at both company-owned stores, as well as at boutiques owned by third parties. (Id. at ¶ 23.) Before Alex and Ani will affiliate with a third party-owned boutique, however, it employs a rigorous screening process to ensure that "jewelry is displayed in a manner that preserves [Alex and Ani's] premiere-level brand." (Id. at ¶¶ 23-24.)

---

[1] As alleged in the Amended Complaint (ECF No. 25).

BJ's is based in Massachusetts and operates retail stores through which it sells products which may or may not be American-made, spiritually uplifting and so forth, but are certainly sold at discounted prices. In May 2013, a representative of BJ's contacted one Michael David Foonberg ("Foonberg"), the President and owner of JJM, Roxy and Genesis, in an attempt to procure Alex and Ani jewelry for resale at BJ's.[2] (Id. at ¶¶ 25-26.) Foonberg subsequently submitted an application to Alex and Ani to sell Alex and Ani product, but this application was rejected. (Id. at ¶¶ 28.)

Perhaps sensing the oncoming rejection, the trio of JJM, Roxy and Genesis began exploring alternative means of securing Alex and Ani product. In May 2013, a JJM employee by the name of Carla Flammini ("Flammini") reached out to Weiss,[3] the President and owner of Jets.[4] (Id. at ¶¶ 11, 29.) Weiss is

---

[2] JJM and Roxy are Utah corporations; Genesis is a Colorado corporation; the principal place of business of all three entities is located in Colorado. (Am. Compl. ¶¶ 7-9.)

[3] As will be discussed, Flammini is alleged to perform work for Roxy and Genesis as well. (Id. at ¶ 29.)

[4] Weiss is a California resident and Jets is a California corporation with its principal place of business located in California. (Id. at ¶¶ 10-11.)

alleged to have connected JJM, Roxy and Genesis with Brody and Brody's company, ELC.[5]

Genesis agreed to pay Brody and ELC a commission for each piece of Alex and Ani jewelry that Brody was able to obtain. (Id. at ¶ 31.)  On approximately May 22, 2013, Brody contacted Alex and Ani on behalf of ELC.  (Id. at ¶ 32.)  Brody represented that ELC was working for the organizers of the Wellington Classic Fall Challenge, a prestigious dressage competition in Florida,[6] in order to secure discounted merchandise that would be included in gift bags provided to patrons in VIP suites at the event.  (Id.)

In late May and early June 2013, Brody and Alex and Ani exchanged a series of emails in which Brody assured Alex and Ani that its product would be used for these promotional purposes only and would, in no event, be resold.  (Id. at ¶ 38.)  Alex

_____

[5] Brody is a California resident and ELC is a California limited liability company with its principal place of business located in California. (Id. at ¶¶ 5-6.)

[6] For those whose sporting interests tend more toward games with balls, bats, racquets and the like, and less toward dancing horses, dressage is a competitive equestrian sport in which horse and rider "walk, trot and canter" their way through a "prescribed pattern of movements." See About Dressage, Fédération Equestre Internationale, www.fei.org/fei/disc/ dressage/about-dressage (last visited July 16, 2014).  In other words, it's "horse ballet." Dressage, Wikipedia, en.wikipedia.org/wiki/Dressage (last visited July 16, 2014).

4

and Ani asked that Brody draft a written contract memorializing the arrangement. (Id. at ¶ 40.)

Simultaneously, Brody was exchanging emails with Weiss, Foonberg and Flammini. In these emails, Brody sought advice as to the drafting of the contract and the parties discussed how they could extract further merchandise from Alex and Ani at discounted prices. (Id. at ¶¶ 43-48.) Upon receipt of an email from Weiss seeking input on Alex and Ani's request that a clause be included in the contract that would prohibit resale, Foonberg responded: "Just read this . . . I don't want to know about it[,] however[,] just make sure it is very vague and always leave yourself an out." (Id. at ¶ 43.) Once a contract had been executed, Brody circulated it to Weiss and Flammini. Upon receipt of the email, Flammini responded (cleverly): "I THINK IT (sic) BEST, IF I DON'T KNOW ANYTHING :-)." (Id. at ¶ 45.)

On June 28, 2013, based on Brody's representations, Alex and Ani sold ELC 8,000 pieces of its jewelry at deeply discounted prices. (Id. at ¶ 51.) Alex and Ani delivered this jewelry to an East Boston, Massachusetts distribution company. (Id.) The Amended Complaint suggests that one Julie Weiss, acting on behalf of Genesis, Roxy and JJM, negotiated and arranged Alex and Ani's delivery of the jewelry.[7] (Id. at ¶

---

[7] The Amended Complaint suggests that Julie Weiss is the secretary and treasurer of Roxy. (Id. at ¶ 74.) At oral

167.)  From the East Boston distribution company, unbeknownst to Alex and Ani, the jewelry was shipped to Roxy and Genesis in Colorado.  (<u>Id.</u> at ¶ 53.)

Several weeks later, Brody again contacted Alex and Ani, this time purporting to seek merchandise that could be given away as promotional gifts to elite guests at the Austin Film Festival.  (<u>Id.</u> at ¶ 54.)  Seeing another audience in its target demographic and subject to another agreement that the goods could not be resold under any circumstances, Alex and Ani sold an additional 9,000 pieces to Brody and ELC.  (<u>Id.</u> at ¶¶ 55-56.)  Alas, these items too made their way to Roxy and Genesis, and not to the film festival.  (<u>Id.</u> at ¶ 57.)  Finally, in a third transaction, Alex and Ani agreed to sell approximately 9,000 more pieces to Brody and ELC, also purportedly for use in connection with the Austin Film Festival.  (<u>Id.</u> at ¶ 64.)  These pieces, likewise, made their way to Roxy and Genesis.  (<u>Id.</u> at ¶ 66.)

In total, Alex and Ani sold Brody and ELC some 26,668 pieces of its jewelry for approximately $250,000.  (<u>Id.</u> at ¶ 67.)  This merchandise had a retail value of approximately $1,000,000.  (<u>Id.</u>)  In late September 2013, Alex and Ani

---

argument, counsel for Alex and Ani stated that Julie Weiss also has an ownership interest in JJM.  To avoid confusion with J. Jonathan Weiss, her former husband and the president and owner of Jets, this opinion refers to Julie Weiss by her full name.

discovered that the merchandise that it had sold to Brody and ELC was being sold at discounted prices at BJ's locations in Rhode Island and Massachusetts. (Id. at ¶ 68.) Despite representations from Alex and Ani that the merchandise in question had been obtained through fraud, BJ's declined to stop selling the items and received at least one additional shipment from Roxy. (Id. at ¶¶ 73-78.) This lawsuit followed.

II. Discussion

A. Standard of Review

"In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (alteration in original). The complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The Court must "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." Sanchez, 590 F.3d at 41 (citations omitted). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Heightened pleading requirements apply to fraud-based claims. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "What constitutes sufficient particularity necessarily depends upon the nature of the case and should always be determined in the light of the purpose of the rule to give fair notice to the adverse party and to enable him to prepare his responsive pleading." Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 161 (R.I. 2001) (quoting 1 Kent, R.I. Civ. Prac. § 9.2 at 92 (1969)); see also Haft v. Eastland Fin. Corp., 755 F. Supp. 1123, 1126-27 (D.R.I. 1991).

B.    Brody and ELC's Motion to Dismiss

Though Brody and ELC are named in six of the fourteen counts, they move to dismiss only the counts for conversion (Count 12) and violation of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A (Count 14). For the reasons discussed below, the motion to dismiss with respect to the conversion claim will be denied; the motion to dismiss with respect to the Chapter 93A claim will be granted.

i.    Conversion

"The gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent

and exercising dominion over it inconsistent with the plaintiff's right to possession." Fuscellaro v. Indus. Nat'l Corp., 368 A.2d 1227, 1230 (R.I. 1977). "To maintain an action for conversion, [a] plaintiff must establish that she was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." Montecalvo v. Mandarelli, 682 A.2d 918, 928 (R.I. 1996) (emphasis added).

Brody and ELC argue that Alex and Ani cannot support a claim for conversion because Alex and Ani willingly sold the jewelry to Brody and ELC and no longer had title to it at the time of the alleged conversion. But, this argument overlooks the fact that "[a] contract is voidable . . . if 'a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying.'" Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 20 (1st Cir. 2009) (quoting Restatement (Second) of Contracts, § 164 (1979)).

The Amended Complaint plainly alleges that Brody and ELC committed fraud in inducing Alex and Ani to sell merchandise to them. See, e.g., Am. Compl. ¶ 1 ("[Brody and ELC] fraudulently induced Plaintiff Alex and Ani to enter into a contract with ELC . . . ."). Even if the alleged conversion took place after Alex and Ani willingly sold the jewelry to Brody and ELC, Alex and Ani's allegation that the sale was fraudulently induced is

sufficient to allow the conversion claim to proceed because the contract pursuant to which the jewelry was sold was voidable at the time of the alleged conversion. And, if the contract was induced by fraud and voidable, Alex and Ani had the right to possession of the property at the time of the alleged conversion. For this reason, insofar as Brody and ELC seek dismissal of the conversion claim, the motion to dismiss is DENIED.

### ii. Massachusetts Consumer Protection Law

Chapter 93A is Massachusetts' consumer protection statute and prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. A viable Chapter 93A claim requires that "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occur[] primarily and substantially within [Massachusetts]." Id. at § 11.

Brody and ELC seek dismissal of the Chapter 93A claim on grounds that the alleged conduct did not occur primarily and substantially in Massachusetts. This inquiry requires courts to "determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 787, 799 (Mass. 2003).

The Amended Complaint does not suggest that the "center of gravity" of underlying facts took place in Massachusetts. Instead, it merely suggests that BJ's sold Alex and Ani merchandise at locations in Massachusetts and that Julie Weiss instructed Alex and Ani to ship the merchandise to a distribution company in East Boston. (Am. Compl. ¶¶ 2, 51.)

The deception took place principally in Utah, Colorado and California where JJM, Roxy, Genesis, Weiss, Jets, Brody and ELC are based and involved a Rhode Island victim. That some of the merchandise that was fraudulently obtained made its way to retail locations in Massachusetts does not indicate a primary and substantial connection to the Commonwealth.

Likewise, the Amended Complaint describes the East Boston distribution company as nothing more than an uninvolved middleman. The shipping company is not alleged to have been complicit in the scheme, nor is its location in Massachusetts meaningful in any apparent way. As such, this allegation is also insufficient to conclude that the underlying facts occurred primarily and substantially in Massachusetts and the Court GRANTS the motion to dismiss as to the Chapter 93A claim.[8]

---

[8] At oral argument, counsel for Alex and Ani represented that Flammini may have been located in Massachusetts at the time that she was involved in these transactions. This is not in the Amended Complaint, and even if true, Flammini's incidental location in Massachusetts would be insufficient to give rise to a Chapter 93A claim.

C. BJ's Motion to Dismiss

Alex and Ani has brought just one claim against BJ's and it is for conversion. Like Brody and ELC, BJ's seeks dismissal on grounds that a claim for conversion cannot be sustained because Alex and Ani no longer had title to the jewelry at the time of the alleged conversion. The Court rejects this argument for the same reasons as those set forth in Section II(B)(i), supra.[9]

Second, and more substantively, BJ's contends that the conversion claim must be dismissed because BJ's was a good faith purchaser for value. "A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . (d) the delivery was procured through fraud . . . ." R.I. Gen. Laws § 6A-2-403(1). "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." Id. at § 6A-1-201(b)(20).

---

[9] The Court has considered the case upon which BJ's principally relies, Johnson & Johnson Prods., Inc. v. Dal Int'l Trading Co., 798 F.2d 100 (3d Cir. 1986), but concludes that the case is unavailing. Alex and Ani has sufficiently alleged that Brody and ELC intended to resell the jewelry at the time that Brody and ELC fraudulently induced Alex and Ani to sell it to them. See id. at 103 n.2 ("If, at the time of contracting with [a manufacturer], [a middleman] had intended to restrict the distribution of goods to [an area in which resale was permitted] and only later decided to distribute the goods elsewhere, no fraudulent inducement to contract would have existed.").

Of course, as the title of the doctrine would suggest, it is incumbent upon a good faith purchaser for value to act in good faith.  See Shappy v. Downcity Capital Partners, Ltd., 973 A.2d 40, 44 (R.I. 2009) (describing the good faith purchaser for value doctrine as having been intended to "protect innocent purchasers and to allow them to obtain and convey unsullied interests.").  Crucial to the determination of whether BJ's is entitled to good faith purchaser status is the alleged timeline of events.  The Amended Complaint suggests that Alex and Ani first became aware that its products were being sold at BJ's in mid-September 2013.  On October 3, an Alex and Ani sales manager left a voicemail for a BJ's jewelry buyer, inquiring as to where BJ's had obtained this product.  (Am. Compl. ¶ 73.)  This inquiry was quickly elevated by email to several BJ's executives.  (Id.)  On October 9, BJ's placed another large order with Roxy for additional pieces.  (Id. at ¶ 75.)

On October 10, Alex and Ani notified BJ's by email and phone that it was investigating whether the jewelry in question had been stolen or diverted.  (Id. at ¶ 76.)  Again, BJ's subsequently placed another order on October 16.  (Id. at ¶ 78.)

On October 18, Alex and Ani sent to BJ's a copy of a demand letter that it had sent to Brody and ELC.  (Id. at ¶ 80.)  This letter stated unequivocally Alex and Ani's belief that Brody and ELC had committed fraud in obtaining the jewelry.  (Id. at 79.)

Nevertheless, three days later, BJ's placed yet another order with Roxy for additional pieces. (Id. at ¶ 84.)

BJ's argues that none of these communications were sufficient to place BJ's on notice that it was selling goods procured by fraud and, even if one were to conclude that the October 18 letter was sufficient, BJ's only ordered approximately $40,000 worth of product after that date, leaving Alex and Ani below the $75,000 threshold required for federal subject matter jurisdiction. See 28 U.S.C. § 1332(a).

The Court concludes that the October 18 letter was sufficient to place BJ's on notice that the jewelry in question had been procured through fraud. Though it cites a California fraud statute, the letter plainly states that Brody and ELC committed fraud and breached the terms of their agreement by reselling the jewelry to Roxy.

Accepting for a moment the premise that only upon receipt of this letter was BJ's placed on notice of the fraud, BJ's would have the Court dismiss the conversion claim on grounds that the value of the single additional order that BJ's placed after this date does not exceed $75,000. This argument, while compelling, overlooks the fact that Alex and Ani has pled not only financial loss, but reputational harm as well. (Am. Compl. ¶ 205 ("Alex and Ani . . . has suffered and continues to suffer irreparable injury, including irreversible erosion of its brand

14

image . . . .").)  Though the Amended Complaint does not put a dollar figure on the reputational harm allegedly resulting from the sale of Alex and Ani's "distinctive fine-quality" jewelry at BJ's, it is conceivable that this harm, in addition to the monetary damages, would exceed $75,000.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938) ("The rule governing dismissal for want of jurisdiction . . . is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

What is more, the Court is unwilling to conclude at this early juncture that it was only upon receipt of the letter that BJ's first became aware that the jewelry had been procured by fraud.  Further discovery is warranted to assess the allegations that BJ's either did, or should have come to this conclusion earlier.  All of this is to say that the Court declines to presume that BJ's is entitled to status as a good faith purchaser for value.  As such, BJ's motion to dismiss must be DENIED.

D.   Roxy, Genesis and JJM's Motion to Dismiss

Roxy, Genesis and JJM stack arguments in support of dismissal of all of the claims brought against them like so many Alex and Ani bracelets upon the outstretched arm of a trendy

woman. Those arguments may be summarized as follows: (1) Roxy, Genesis and JJM should be dismissed because Alex and Ani failed to adequately plead an agency relationship; (2) Genesis and JJM should be dismissed based on this Court's lack of personal jurisdiction; (3) Alex and Ani's tortious interference claim should be dismissed because Alex and Ani did not adequately plead intent and knowledge; (4) Alex and Ani's fraudulent omission claim must be dismissed based on Alex and Ani's failure to allege a duty to disclose on the part of Roxy, Genesis or JJM; (5) Alex and Ani's conversion claim should be dismissed because Alex and Ani did not have a possessory interest in the jewelry at the time of the alleged conversion; and (6) the Chapter 93A claim should be dismissed for failure to allege sufficient facts linking the claims to Massachusetts.

       i.   Agency

Because a purported agency relationship underlies many of the claims brought by Alex and Ani, the Court begins by assessing the sufficiency of these allegations. Roxy, Genesis and JJM argue that Alex and Ani has not adequately alleged an agency relationship between Roxy, Genesis and JJM on the one hand, and Weiss, Jets, Brody and ELC on the other.

Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent

by the other so to act." <u>Lawrence v. Anheuser-Busch, Inc.</u>, 523 A.2d 864, 867 (R.I. 1987) (quoting Restatement (Second) Agency § 1(1) (1958)). An agency relationship exists where: (1) the principal manifests that the agent will act for him; (2) the agent accepts the undertaking; and (3) the parties agree that the principal will be in control of the undertaking. <u>Butler v. McDonald's Corp.</u>, 110 F. Supp. 2d 62, 66 (D.R.I. 2000). "It is essential to the relationship that the principal have the right to control the work of the agent, and that the agent act primarily for the benefit of the principal." <u>Lawrence</u>, 523 A.2d at 867.

Alex and Ani characterizes the relationship between the Defendants as follows: Roxy, Genesis and JJM acted as the principals; Weiss and Jets acted as agents; and Brody and ELC acted as subagents. Indeed, the Amended Complaint contains numerous allegations suggesting these relationships to have existed. For example, the Amended Complaint refers repeatedly to Flammini, the employee of JJM who also allegedly performs work for Roxy and Genesis. (Am. Compl. ¶ 29.) The Amended Complaint suggests that Flammini made the initial contact with Weiss in an attempt to find a buyer capable of obtaining Alex and Ani product. (<u>Id.</u>) In turn, Weiss contacted Brody and an arrangement was reached whereby Genesis would pay Brody and ELC

a commission on each piece of Alex and Ani jewelry acquired. (Id. at ¶¶ 30, 31.)

Later, after Brody had allegedly duped Alex and Ani into agreeing to the arrangement and as contract negotiations were unfolding, Alex and Ani emailed Brody asking that a provision prohibiting resale be included. The Amended Complaint suggests that Brody forwarded this email to Weiss, who then forwarded it to Foonberg (the owner of Genesis, JJM and Roxy). (Id. at ¶ 43.) Foonberg responded as follows: "Just read this . . . I don't want to know about it[,] however[,] just make sure it is very vague and always leave yourself an out." (Id.)

Roxy, Genesis and JJM are also alleged to have exercised control over the styles of jewelry that Brody and ELC acquired. (Id. at ¶ 50.) For example, Flammini allegedly asked Weiss whether Brody could "come up with an event in boston (sic) or ny (sic) so I can get some of those 'places we love' bracelets." (Id. at ¶ 48.) Shortly thereafter, Brody emailed Alex and Ani, suggesting that many of the attendees at the Wellington Classic hailed from the northeast and seeking to acquire the 'places we love' pieces about which Flammini had inquired. (Id. at ¶ 49.)

In sum, the Amended Complaint depicts a scheme in which Roxy, Genesis and JJM effectively acted in concert in directing Weiss and Jets, who in turn directed Brody and ELC in the effort

to dupe Alex and Ani.  These allegations are sufficient at the pleading stage to establish an agency relationship.

ii.  Personal Jurisdiction

Genesis and JJM (but not Roxy) seek dismissal on the grounds that this Court lacks personal jurisdiction to hear claims against them.  Specific, rather than general, personal jurisdiction is at issue, as "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (citations omitted) (internal quotation marks omitted).  Minimum contacts must be such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In other words, personal jurisdiction requires establishment that: (1) the claim arises out of, or relates to, the defendant's forum-state activities; (2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) the exercise of jurisdiction is reasonable. See Adelson, 510 F.3d at 49.

19

The issue of personal jurisdiction is closely related to the agency allegations discussed previously. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992) ("[W]e remark the obvious: the contacts of a corporation's agent can subject the corporation to personal jurisdiction. This result flows naturally from the corporate form."). And, indeed, this makes sense. An alleged tortfeasor cannot reasonably expect to escape liability merely because he engaged an agent to liaise with the victim on his behalf.

While it is Roxy that is alleged to have ultimately resold the jewelry to BJ's and Brody and ELC who are alleged to have made the false representations regarding use of the products for promotional purposes, Alex and Ani has pled numerous facts suggesting that Genesis and JJM were closely involved in orchestrating the fraud. As examples, it was Flammini (a JJM employee) who initiated contact with Weiss and Jets and who exercised control over the items that Brody and ELC were to acquire. (Am. Compl. ¶¶ 29, 48.) Furthermore, it was Genesis who is alleged to have agreed to pay Brody and ELC a commission on each piece of jewelry acquired. (Id. at ¶ 31.) And Julie Weiss, acting on behalf of Genesis, Roxy and JJM, is alleged to have communicated directly with Alex and Ani regarding shipping of the goods to the East Boston distributor. (Id. at ¶ 167.)

In sum, the Amended Complaint contains sufficient allegations directly implicating Genesis and JJM in the scheme. And even were the Court to find otherwise, the adequately pled agency relationship between Roxy, Genesis and JJM and the remaining Defendants would suffice to create a jurisdictional hook for Genesis and JJM. For this reason, the Court declines to dismiss the claims against Genesis and JJM for want of personal jurisdiction.

iii. Tortious Interference Claim

A claim for tortious interference requires that the plaintiff allege facts concerning: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." See Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 752 (R.I. 1995) (quoting Smith Dev. Corp. v. Bilow Enters., 308 A.2d 477, 482 (R.I. 1973)). Roxy, Genesis and JJM seek dismissal on grounds that Alex and Ani did not adequately plead the intent and knowledge elements. This argument may be easily dispatched.

On June 11, 2013, Brody and Alex and Ani executed what the parties refer to as the Wellington Classic Agreement – the agreement whereby Alex and Ani agreed to sell discounted jewelry to Brody and ELC for promotional distribution at the Wellington Classic dressage competition. (Am. Compl. ¶ 44.) The knowledge

element is alleged plainly in the Amended Complaint, which states that Brody sent a copy of the agreement to Weiss, who then forwarded it to Flammini. (<u>Id.</u> at ¶ 45.) Flammini acknowledged this email by responding "I THINK IT (sic) BEST, IF I DON'T KNOW ANYTHING :-)." (<u>Id.</u>) Despite Flammini's lighthearted attempt to maintain a façade of ignorance, the knowledge of Roxy, Genesis and JJM of the existence of this agreement and its prohibition against resale is plainly alleged.[10]

The same can be said of the intent element, as the Amended Complaint alleges that Roxy, Genesis and JJM intentionally diverted and resold jewelry in violation of the express terms of the Wellington Classic Agreement. (<u>Id.</u> at ¶¶ 53-58.) Because both the intent and knowledge elements are sufficiently pled, the Court declines to dismiss the tortious interference claim.

### iv. Fraudulent Omission Claim

Roxy, Genesis and JJM seek dismissal of Alex and Ani's fraudulent omission claim on grounds that they did not owe Alex and Ani a duty to disclose the knowledge that the jewelry was to

---

[10] This conclusion is further supported by Foonberg's alleged involvement in the negotiation of the Wellington Classic Agreement. (<u>See</u> Am. Compl. ¶ 43.)

be resold in violation of the prohibition against resale.[11]  This argument falls flat.

It is, of course, true that "mere silence in the absence of a duty to speak is not fraudulent," <u>McGinn v. McGinn</u>, 146 A. 636, 638 (R.I. 1929), but the question of whether such a duty exists turns on the particular facts of the case.  <u>Nye v. Brousseau</u>, C.A. No. KC 12-1096, 2013 R.I. Super. LEXIS 127, at *23 (R.I. Super. Ct. July 10, 2013) (citing 37 Am. Jur. 2d, Fraud and Deceit, § 200 at 227 (2001)).  This duty may arise where one party to a business transaction knows of facts or circumstances that "are not open to equal observation by both parties and are not discoverable by the exercise of ordinary diligence."  37 Am. Jur. 2d, Fraud and Deceit, § 205 at 249 (2013).  "A reason given for this rule is that since matters are not what they appear to be, and the true state of affairs is not discoverable by diligence, deceit is accomplished by suppression of the truth."  <u>Id.</u>  Here, Alex and Ani has sufficiently alleged that Julie Weiss intentionally withheld the fact that the jewelry was to be diverted in violation of the resale prohibition at the time that she communicated with Alex and Ani on behalf of Roxy, Genesis and JJM.  This nondisclosure is

---

[11]  Alex and Ani alleges that this disclosure should have been made at the time that Julie Weiss communicated directly with Alex and Ani on behalf of Roxy, Genesis and JJM in order to arrange for shipping.  (<u>See</u> <u>id.</u> at ¶¶ 167-174.)

sufficient to permit Alex and Ani's fraudulent omission claim to proceed.

### v.   Conversion and Chapter 93A Claims

The arguments advanced by Genesis, Roxy and JJM on the conversion and Chapter 93A claims are almost identical to those discussed previously with respect to Brody, ELC and BJ's.   For the same reasons as those outlined above, and subject to the caveat that follows, the Court concludes that Alex and Ani's conversion claim is appropriately pled and may continue, but that the Chapter 93A claim should be dismissed.

As discussed above, a claim for the conversion of tangible property requires that the defendant have possessed or exercised control over that property.   See Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006).   The Amended Complaint alleges only that the jewelry was shipped to Colorado to Roxy and Genesis (Am. Compl. ¶¶ 52-53), but it does not suggest that JJM ever took possession of or otherwise exercised control over it.   For this reason, the conversion claim is DISMISSED with respect to JJM.

## III. Conclusion

For all of these reasons:

(1)   Brody and ELC's motion to dismiss is GRANTED IN PART and DENIED IN PART.   The conversion claim may proceed while the Chapter 93A claim is dismissed.

(2)   BJ's motion to dismiss is DENIED.

(3) Roxy, Genesis and JJM's motion to dismiss is GRANTED
    IN PART and DENIED IN PART.  All claims may proceed
    with the exception of the Chapter 93A claim as to all
    three defendants and the conversion claim as to JJM.


IT IS SO ORDERED.


_____
William E. Smith
Chief Judge
Date:  July 18, 2014